RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0243p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v*.

DAVID TAYLOR,
*Defendant-Appellant*.

No. 26-1222

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:25-cr-20560-1—Terrence George Berg, District Judge.

Decided and Filed: August 25, 2026

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

---

## COUNSEL

**ON BRIEF and MOTION TO EXPEDITE:** Brent A. Hannafan, J. Alex Little, Zachary C. Lawson, LITSON PLLC, Nashville, Tennessee, Laurence H. Margolis, MARGOLIS & CROSS, Ann Arbor, Michigan, Allison L. Kriger, LARENE & KRIGER, Detroit, Michigan, for Appellant. Daniel D. Shin, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON MOTION TO TAKE JUDICIAL NOTICE:** Sarah Resnick Cohen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

## OPINION

---

Defendant David Taylor appeals the district court's orders denying his motions to revoke his pretrial detention order and to reopen his detention hearing. Taylor requests oral argument, but we conclude that the facts and legal arguments are adequately presented in the briefs and record such that oral argument is unnecessary. Fed. R. App. P. 34(a)(2)(C). We grant the

government's motion to take judicial notice of the second superseding indictment, affirm the district court's order denying Taylor's motion to revoke his pretrial detention order, and deny as moot Taylor's motion to expedite his appeal.

Taylor is the leader of the Kingdom of God Global Church (KOGGC), formerly known as Joshua Media Ministries International. A grand jury indicted Taylor on eight counts of forced labor, one count of conspiracy to commit forced labor, and one count of money laundering conspiracy. The grand jury alleged that Taylor recruited individuals from across the country to act as his personal servants or to work as phone solicitors at call centers he established to raise money to support the operations of KOGGC. None of these workers received pay. According to the indictment, Taylor controlled nearly every aspect of his workers' lives. Workers slept at call centers or homes owned by KOGGC, and they needed permission to leave those locations. Taylor demanded that his workers give up any other employment they had, and he set daily, weekly, monthly, and yearly goals for soliciting donations that were impossible to meet. If workers attempted to leave KOGGC, Taylor told them they would suffer "divine judgment in the form of physical harm and eternal damnation." Taylor used similar spiritual threats to coerce workers to produce and share sexually explicit photos and videos and threatened to disseminate the images if the workers defied him. He also prohibited dating among his workers and demanded that they sever ties with any family or friends who questioned him or KOGGC.

When workers failed to meet their donation goals or follow other orders, Taylor imposed punishments that included physical assaults and threats of further violence, deprivation of sleep and shelter, food restriction, and imposition of additional, unattainable work quotas. Taylor also oversaw lengthy meetings where workers who had displeased him were humiliated and rebuked in front of other workers. KOGGC received approximately $50,000,000 in donations over more than 10 years, and the funds were used in part to purchase residences and luxury vehicles for Taylor.

A magistrate judge held a detention hearing and ordered that Taylor be detained pending his trial. Taylor moved to revoke that order, *see* 18 U.S.C. § 3145(b), and the district court held another hearing. By proffer at the hearing and in a written submission, the government reported that it had since found "an extraordinary amount of sexually explicit materials" on Taylor's

electronic devices and learned that he had coerced some female KOGGC members to send him sexually explicit videos and photographs, which he then used as leverage over them. Through the execution of search warrants, the government also discovered that minor children of Taylor's workers lived at call centers and other KOGGC properties and were sometimes separated from their parents for years. In interviews, minors reported that they witnessed some of the punishments imposed by Taylor and suffered their own physical, emotional, and psychological abuse. Taylor disputed the government's allegations and called a witness who testified that she had lived at a KOGGC call center, was not prohibited from leaving, and did not see Taylor use physical force against workers. On cross-examination, the witness admitted that she had been in a "romantic or sexual relationship" with Taylor and that her mother was on the board of directors of KOGGC and is a "large donor."

In October 2025, the district court orally denied Taylor's § 3145(b) motion after finding that no conditions could reasonably assure the safety of the community if he were released. Instead of appealing that decision, *see* 18 U.S.C. § 3145(c), Taylor moved to reconsider the denial under Eastern District of Michigan Local Rule 7.1(h).

In February 2026, after holding another hearing and reviewing additional evidence submitted by the parties, including reports of statements by Taylor's victims, the district court denied Taylor's motion. The district court stated that Taylor had "incorrectly" moved for relief under Local Rule 7.1(h) instead of 18 U.S.C. § 3142(f)(2)(B), which permits a detention hearing to be "reopened" only if certain requirements are met. 18 U.S.C. § 3142(f)(2)(B). Applying those requirements, the district court denied reopening because the information Taylor relied on was neither unknown to him at the time of his detention hearing nor material to the issue of his dangerousness. *See id.* The district court also stated that it would deny the motion if it applied the standards for reconsideration in Local Rule 7.1(h). The district court noted that the victim statement reports, in particular, gave it "an even greater concern than before that releasing Taylor would represent a danger to the community and to witnesses." Thirteen days later, Taylor appealed both the denial of his motion to revoke and his motion to reconsider.

In his brief, Taylor only challenges the district court's October 2025 order denying his motion to revoke. As a result, Taylor has abandoned his appeal of the February 2026 order

denying his motion to reconsider. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006).

Turning to the appeal from the October 2025 order, we must first address the government's argument that the appeal is time-barred. Relying on our decision in *Miller v. William Beaumont Hospital*, the government argues that the appeal is time-barred because Eastern District of Michigan Local Rule 7.1(h)(1) precluded the motion to reconsider, and a motion to reconsider that violates Local Rule 7.1(h)(1) cannot toll the time for taking an appeal. *See* 121 F.4th 556, 558 (6th Cir. 2024). *Miller* does not apply to this case. In *Blackwell v. Nocerini*, we explained that Local Rule 7.1(h)(1) "cover[s] only an order completing the case." 123 F.4th 479, 486 (6th Cir. 2024). It does not apply to interlocutory orders that are deemed final and appealable under 28 U.S.C. § 1291. *Id.* Rather, those motions are covered by Local Rule 7.1(h)(2), which does permit motions for reconsideration. Here, Congress has defined detention orders as final and appealable under § 1291, *see* 18 U.S.C. § 3145(c), but they do not terminate the entire case. Thus, the order is interlocutory under *Nocerini*, and that means the motion for reconsideration tolled the time for taking the appeal.

With that out of the way, we now turn to the merits.

Rather than engaging with the district court's analysis, Taylor advances arguments that are largely untethered from the § 3142(g) factors. Nonetheless, the § 3142(g) factors support his pretrial detention. A defendant must be detained before trial if, after conducting a hearing, a judicial officer determines that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The district court's "finding of dangerousness must be 'supported by clear and convincing evidence.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(f)(2)(b)). We review a district court's factual findings for clear error and review mixed questions of law and fact (including whether detention is warranted) de novo. *Id.*

Taylor faces a statutory rebuttable presumption of pretrial detention because his forced-labor charges carry maximum terms of imprisonment of 20 years or more, *see* 18 U.S.C. § 3142(e)(3)(D); *see also id.* §§ 1589(d), 1594(b), and the grand jury's indictment alone

establishes probable cause that he committed the offenses, *see Stone*, 608 F.3d at 945. Because he produced "some" evidence that he is neither a danger to the community nor a risk of flight, *id.*, we agree with the district court that Taylor rebutted the presumption. Even when a defendant rebuts a statutory presumption of detention, however, it remains relevant and becomes one of several factors that must be weighed in determining whether any conditions can reasonably assure the safety of the community if the defendant is released pretrial. *See id.* The remaining factors that must be considered are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). Based on the grand jury's allegations, we agree with the district court that these factors weigh in favor of detention and support the determination that no conditions could ensure the safety of the community if Taylor were released.

Taylor's challenges to his detention order also fail. First, he contends that his pretrial detention violates the First Amendment because the government's charges are based on "theology" and its view that his religious beliefs are insincere rather than on "evidence of criminal conduct." Citing *United States v. Ballard*, 322 U.S. 78, 86-87 (1944), he asserts that the government may not punish individuals solely because of their religion. He also argues that the district court unlawfully ruled that he "must not be allowed to affiliate with his church at all" and should have applied a heightened "least-restrictive means standard" because his prosecution "implicate[s] . . . First Amendment concerns."

We reject these arguments. While there is constitutional protection for freedom of religious belief, "[r]eligious conduct remains subject to regulation for the protection of society." *United States v. Greene*, 892 F.2d 453, 456 (6th Cir. 1989) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940)). As the district court noted, the determination that Taylor must be detained is based on his charged criminal conduct, not on his religious beliefs. That some of Taylor's charged conduct occurred within KOGGC facilities and may be viewed by him as "religious" does not shield him from prosecution or detention pending trial. *See United States v. Middleton*, 690 F.2d 820, 824 (11th Cir. 1982). Further, the district court did not prohibit Taylor

from exercising his religion or "affiliating" with his church; it concluded only that releasing him to the third-party custodians he proposed would not reasonably assure the safety of the community because those individuals were members of KOGGC, creating the danger that he would use them to communicate or carry out threats if he were released. Finally, the Bail Reform Act already imposes a "least-restrictive means" requirement, *see* 18 U.S.C. § 3142(e)(1), and we agree with the district court that no combination of conditions would reasonably assure the safety of the community. To the extent we have an independent obligation to ensure that Taylor's pretrial detention "does not constitute a forbidden intrusion on the field of free expression," *United States v. Israel*, 317 F.3d 768, 770 (7th Cir. 2003) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984)), we conclude that it does not because Taylor has not shown that his detention will infringe on his right to freely exercise his religious beliefs, *see Kent v. Johnson*, 821 F.2d 1220, 1225 (6th Cir. 1987).

Taylor also argues that the government's proffer regarding physical violence that he committed or directed was too "vague" and "uncontextualized" to be accepted by the district court. We disagree. The grand jury alleged that Taylor employed physical assaults and threats of further violence to compel forced labor. The government also proffered specific facts about the violence at the detention hearing and in a written submission, including that Taylor assaulted or directed assaults against his workers when they displeased him, that Taylor and at least nine other KOGGC members acting at his instruction committed violent acts, and that physical force was used against men, women, and at least one minor living at a KOGGC property. *See Stone*, 608 F.3d at 948 (stating that it is acceptable for the government to proceed by proffer and hearsay at a detention hearing). The district court did not clearly err in accepting the government's proffer, and the violent acts are also only one of several reasons for his detention.

Taylor next contends that his possession of sexually explicit material sent to him by female KOGGC members and threats to disclose that material cannot justify detention because any related dangers can be managed with conditions of release, such as prohibiting him from using electronic devices and from contacting "identified" members who sent him material. The record shows, however, that Taylor routinely used others to coerce, threaten, and punish his victims. Moreover, the government noted that it likely did not seize all sexually explicit material

in Taylor's possession, and that additional material may be possessed by or accessible to other KOGGC members who will act at his direction.

Taylor last argues that he should be released pending trial because his co-defendants were each released on conditions. But a co-defendant's release is not a factor that can be considered at a detention hearing. *See* 18 U.S.C. § 3142(g); *United States v. Bennett*, No. 94-6590, 1995 WL 25412, at *1 (6th Cir. Jan. 23, 1995). Additionally, the record established that Taylor was the leader of the forced labor conspiracy while his co-defendants carried out his orders, creating differences in the nature and circumstances of their offenses and other § 3142(g) factors.

For these reasons, the motion to take judicial notice is **GRANTED**, and we **AFFIRM** the district court's order denying Taylor's motion to revoke his pretrial detention order. We **DENY AS MOOT** Taylor's motion to expedite his appeal.

ENTERED BY ORDER OF THE COURT



Kelly L. Stephens, Clerk